**Pedro Rodriguez DELGADO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE: Board of Immi-
gration Appeals, Respondent.**

No. 79–1763.

United States Court of Appeals,
Tenth Circuit.

Dec. 19, 1980.

Lorenzo E. Tapia and Miguel P. Campos,
Tapia & Campos, Albuquerque, N. M., for
petitioner.

James P. Morris and Robert Kendall, Jr.,
Dept. of Justice, Washington, D. C., for
respondent.

Before BARRETT, DOYLE and LOGAN,
Circuit Judges.

LOGAN, Circuit Judge.

Pedro Rodriguez Delgado petitions for re-
view of the decision of the Board of Immi-
gration Appeals finding him deportable to
Mexico and not entitled to a waiver of
deportation under 8 U.S.C. § 1251(f). Del-
gado contends that (1) as a parent of Unit-
ed States citizens he is entitled to a waiver
of deportation under 8 U.S.C. § 1251(f), and
(2) his deportation violates the Fifth and
Fourteenth Amendment rights of his citizen
children by, in effect, either exiling them or
separating them from their father. The
appeal was submitted on the briefs by
agreement of the parties.

The facts of the case are simple and not
in dispute. Delgado, a Mexican national,
has resided in this country for the past
twelve or thirteen years with short inter-
ruptions occurring after prior deportation
proceedings. Delgado returned after each
deportation. His last illegal entry occurred
in June 1974, when Delgado walked across
the Rio Grande between Juarez, Chihuahua,
Mexico, and El Paso, Texas, without immi-
gration inspection. Over the course of his
years in the United States, Delgado has
fathered four children, all of whom are
citizens of the United States.

On June 22, 1977, an immigration judge
found that Delgado had entered this coun-
try without inspection and therefore was
deportable under 8 U.S.C. § 1251(a)(2). The
court ordered Delgado to either depart the
country voluntarily or be deported by the
United States. The Board of Immigration
Appeals affirmed that decision, rejecting all
of Delgado's defenses.

Delgado argues that as a parent of citizen children, he is qualified for a waiver of deportation pursuant to 8 U.S.C. § 1251(f). Section 1251(f) provides:

The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence.

Delgado admits that entry was not obtained by fraud or misrepresentation, and the record reflects that the ground for his deportation is not fraud but rather his entry without inspection. Nevertheless, petitioner asserts that his strong family ties with United States citizens place him within the scope of § 1251(f).

The primary support for Delgado's argument comes from *INS v. Errico*, 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966), and *Lee Fook Chuey v. INS*, 439 F.2d 244 (9th Cir. 1970), cases which emphasize the humanitarian aspects of the provision. But *Reid v. INS*, 420 U.S. 619, 95 S.Ct. 1164, 43 L.Ed.2d 501 (1975), requires us to reject Delgado's contentions. In *Reid*, the Supreme Court granted certiorari specifically to decide if the case of *Lee Fook Chuey* was correct in holding that § 1251(f) could provide relief from deportation for persons deported for failure to comply with entry inspection. *Id.* at 628. The Court held that § 1251(f) was not intended to allow waiver of deportation for entry without inspection. *Accord, Cervantes v. INS*, 510 F.2d 89 (10th Cir. 1975); *Robles v. INS*, 485 F.2d 100 (10th Cir. 1973); *Preux v. INS*, 484 F.2d 396 (10th Cir. 1973), *cert. denied*, 415 U.S. 916, 94 S.Ct. 1413, 39 L.Ed.2d 470 (1974). *See also Skelly v. INS*, 630 F.2d 1375 (10th Cir. 1980).

Delgado asserts that his deportation will deprive his children of their Fifth and Four-teenth Amendment rights. Because Delgado will be required to leave the country, his children will be forced either to accompany their father to Mexico or to remain in this country without him. Should they leave, Delgado argues, the government has in effect exiled them, thus depriving them of their rights of citizenship in violation of the Fourteenth Amendment. Should the children stay in this country, Delgado contends the children's Fifth Amendment rights are violated by the forced separation from their father.

One of these undesirable consequences certainly will occur if Delgado is deported, assuming he remains in Mexico. We cannot say, however, that the government's action is rendered unconstitutional by such consequences. In *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), the Supreme Court reaffirmed " 'the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.' " *Id.*, at 792, 97 S.Ct. at 1477 (quoting *Shaughnessy v. Mezei*, 345 U.S. 206, 210, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953)). In *Fiallo*, alien fathers challenged under the First, Fifth, and Ninth Amendments the preferential status granted by 8 U.S.C. §§ 1101(b)(1)(D) and 1101(b)(2) to alien mothers, but not alien fathers, of illegitimate children. The challengers argued that the statutory provisions discriminated against them on the basis of sex and marital status in violation of their right to equal protection of the law, seriously burdened family and privacy rights, and denied them due process of law because the statute incorporated an unwarranted, conclusive presumption that a father lacks strong emotional and economic ties to his illegitimate child. The families of those alien fathers of citizen children were presented with the same choice facing Delgado and his children in this case; *viz.*, either to leave the children to grow up in this country without their father or to take the children to another country. Despite the severe consequences brought about by the statute, the Supreme Court deemed it improper even to examine the justifications for the legislative decision, holding the deci-

sion was one " 'solely for the responsibility of the Congress and wholly outside the power of this Court to control.' " *Id.*, 430 U.S. at 799, 97 S.Ct. at 1481, (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 597, 72 S.Ct. 512, 522, 96 L.Ed. 586 (1952)).

■ Delgado's reliance upon *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), is misplaced. The review to be given immigration laws differs markedly from that given other laws. This Court has repeatedly held that the incidental impact visited upon the children of deportable, illegal aliens does not raise constitutional problems. *Cervantes v. INS*, 510 F.2d at 91–92 (Ninth Amendment); *Robles v. INS*, 485 F.2d at 102 (Fifth Amendment). We hold the result is not changed by the additional reliance upon the children's Fourteenth Amendment rights.

AFFIRMED.